# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

VORNELIUS J. PHILLIPS,
    Petitioner,

vs.

DWIGHT NEVEN, *et al.*,

    Respondents.

2:10-cv-00666-PMP-PAL

**ORDER**

This is an action on a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 filed by petitioner Vornelius J. Phillips. The matter is before the Court on the merits, respondents having filed their answer and petitioner his reply.

## I.    Procedural History

In April of 2001, petitioner was arrested and charged with Murder with the Use of a Deadly Weapon, two counts of Robbery with the Use of a Deadly Weapon, First Degree Kidnaping with Substantial Bodily Harm, one count of First Degree Kidnaping, Robbery, two counts of Battery with the Use of a Deadly Weapon, Attempted Murder with the Use of a Deadly Weapon, Battery with a Deadly Weapon with Substantial Bodily Harm and Stop Required on Signal of Police Officer.[1] Three years later, on February 18, 2004, petitioner entered guilty a plea to a charge of First Degree Murder with the Use of a Deadly Weapon, Robbery with the Use of a Deadly Weapon, First Degree Kidnaping with Substantial Bodily Harm, First Degree Kidnaping, Robbery, Assault with a Deadly

---

[1] The facts set forth here are derived from the respondents' answer and supported by the exhibits filed in support of the answer, found in the Court's docket at ECF No. 4.

1  Weapon, Battery with the Use of a Deadly Weapon, Attempted Murder with the Use of a Deadly
2  Weapon and Stop Required on Signal of Police Officer.  The charges arose from a murder,
3  carjacking and high-speed chase wherein a woman was murdered, a passenger in the hijacked
4  taxicab and a Nevada Highway Patrol Officer involved in the attempts to stop and arrest petitioner
5  were both seriously injured and several automobiles were destroyed.

6        Petitioner was sentenced and he is currently serving two consecutive and one concurrent life
7  sentences without the possibility of parole on the deadly weapon enhanced murder and kidnaping
8  charges along with numerous other lengthy terms on the remaining charges.  The Judgment of
9  Conviction was entered on April 27, 2004 and petitioner did not file a direct appeal.

10        Petitioner did file a post-conviction petition for writ of habeas corpus in the state court and
11  he was appointed counsel to assist him in that endeavor.  The petition claimed petitioner received
12  ineffective assistance of counsel which should allow withdrawal of his guilty plea.  While, the
13  incentive offered to persuade petitioner to plead guilty was an offer to not seek the death penalty,
14  petitioner argued that he did not receive any benefit for entering into the guilty plea because, prior to
15  the entry of plea, the trial judge determined that petitioner was retarded and not eligible for the death
16  penalty in any case.

17        The petition was denied, but that decision was overturned by the Nevada Supreme Court and
18  the matter remanded for an evidentiary hearing to explore the issues of why counsel advised
19  petitioner to enter a guilty plea on all the charges and whether laches would preclude the State from
20  successfully challenging the determination that petitioner was retarded and ineligible for the death
21  penalty.

22        At the evidentiary hearing, counsel testified that she believed petitioner had received a
23  substantial benefit for his guilty plea and that it was her opinion that there was a high probability
24  that, had the State challenged the trial court's determination of petitioner's mental state, that
25  determination would have been overturned and the State could have then pursued the death penalty.
26

1  Counsel further opined that she believed the facts of the case were so bad that a jury deciding the
2  petitioner's fate would have easily opted for the death penalty.  Finally, counsel opined she did not
3  believe that laches would preclude the State seeking a review of the mental state determination.
4  Based on the testimony of counsel, the district court again denied the petition and the Nevada
5  Supreme Court affirmed that decision on appeal.
6      Petitioner brings a single claim for relief in his federal petition:
7      MR. VORNEILOUS PHILLIPS RECEIVED INEFFECTIVE
       ASSISTANCE OF COUNSEL AND HE SHOULD BE PERMITTED
8      TO WITHDRAW HIS PLEA OF GUILTY.
9      Petitioner relates that on June 2, 2003, the district court determined that based on petitioner's
10 IQ, the defendant's motion to vacate the notice of intent to seek the death penalty should be granted.
11 Some six months later he entered a plea to all the charges on the indictment and was sentenced to
12 two consecutive life sentences without the possibility of parole - the maximum possible punishment
13 he could have received.  Petitioner suggests this demonstrates that he received no benefit for his
14 bargained plea and that he was mentally incapable of understanding the legal consequences of his
15 plea, making it involuntary and unknowing.  He argues that because counsel advised him to enter the
16 guilty plea, even in light of these facts, counsel was ineffective.

17 **II.   Legal Analysis**

18     Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. §
19 2254(d),

20     An application for a writ of habeas corpus on behalf of a person in custody
       pursuant to the judgment of a State court shall not be granted with respect to any
21     claim that was adjudicated on the merits in State court proceedings unless the
       adjudication of the claim –
22
       (1) resulted in a decision that was contrary to, or involved an unreasonable
23     application of, clearly established Federal law, as determined by the Supreme Court
       of the United States; or
24     (2) resulted in a decision that was based on an unreasonable determination of
       the facts in light of the evidence presented in the State court proceeding.
25
       Thea AEDPA "modified a federal habeas court's role in reviewing state prisoner applications
26

3

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003), citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell*, 535 U.S. at 694.

Furthermore, a state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 73. The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. Id. The state court's factual determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

A.   Ineffective Assistance of Counsel

Petitioner claims he should be permitted to withdraw his guilty plea given that his counsel was ineffective.

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390-391 (2000), citing *Strickland*, 466 U.S. at 687. To establish

4

ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'... 'under prevailing professional norms.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Here, the Nevada Supreme Court found petitioner's claim to be without merit. Applying the *Strickland* standard, the court noted:

> Appellant failed to demonstrate that trial counsel's conduct was deficient. Even if trial counsel's fears regarding appellant's death-ineligible status were objectively unreasonable, counsel testified at the evidentiary hearing to three other reasonable, strategic reasons for advising appellant to plead guilty. Such "[t]actical decisions are virtually unchallengeable absent extraordinary circumstances." [Citations omitted.] Appellant, who had the burden at the evidentiary hearing of demonstrating by a preponderance of the evidence the facts underlying his claim, *see Means v. State,* 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004), presented no extraordinary circumstances. Because appellant has failed to satisfy the deficiency prong, we need not consider the prejudice prong, [fn: We note, however, that appellant also fails to satisfy the prejudice prong. He does not claim that but for pleading guilty, there is a reasonable probability that he would have received a different sentence. Rather, he argues merely that his sentence would have been the result of

1 findings of fact made by a jury. First, appellant knowingly,
2 voluntarily and intelligently waived his right to a jury trial, so he was not entitled to factfinding by a jury. Second, the *Strickland* standard
3 generally looks to whether the outcome - not merely the means - could have been different.], *see Strickland,* 466 U.S. at 697, and
4 therefore conclude that the district court did not err in denying this claim.

5 Petition, attachment 1, pp 2-3.

6     Petitioner argues that because he has been determined to be mentally retarded, he is not
7 responsible for his actions. This is not the view of the United States Supreme Court. While that
8 Court prohibits the imposition of the death penalty on mentally retarded individuals, it has not held
9 such individuals to be immune to criminal sanction. *See Atkins v. Virginia,* 536 U.S. 304 , 318-319
10 (2002). Petitioner has not shown that facing a jury trial would have resulted in a different outcome
11 or sentence. Neither has he demonstrated that the decision of the Nevada Supreme Court was either
12 an unreasonable determination of the facts in light of the evidence or contrary to or an objectively
13 unreasonable application of clearly established federal law. This Court will not grant petitioner
14 relief, as his claim is without merit.

15 **III.     Certificate of Appealability**

16     In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28
17 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951
18 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a
19 petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a
20 certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84
21 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's
22 assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).
23 In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues
24 are debatable among jurists of reason; that a court could resolve the issues differently; or that the
25 questions are adequate to deserve encouragement to proceed further. *Id.*

26

1  Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section
2  2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the
3  order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a
4  notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has
5  considered the issues raised by petitioner, with respect to whether they satisfy the standard for
6  issuance of a certificate of appealability, and determines that none meet that standard. The Court
7  will therefore deny petitioner a certificate of appealability.

8  **IT IS THEREFORE ORDERED** that the petition is **DENIED.** No certificate of
9  appealability shall issue in this matter. The Clerk shall enter judgment accordingly.

11  DATED: February 3, 2011.

_____
PHILIP M. PRO
United States District Judge